## SULZER, Respondent, vs. MOYER, imp., Appellant.

*October 8—October 26, 1915.*

*Contracts: Construction: Validity: When performance optional: Escrow: Agreement to furnish money and assume liabilities: Definiteness: Corporations: Preference of creditors.*

1. The fact that a contract gives one party the option to cancel it upon a certain contingency does not make its performance optional with the other party.
2. By a written contract with officers and stockholders of a corporation as parties of the second part, defendants in substance agreed, first, to "make diligent efforts to purchase all of the outstanding merchandise claims" against the corporation on a basis of fifty cents on the dollar and to furnish the money therefor, or, failing in that, second, to furnish the money for a composition, to be offered by the corporation in bankruptcy, of fifty cents on the dollar, or, if that was not satisfactory to creditors or approved by the court, third, to bid at the sale in case the property of the corporation should go to a bankruptcy sale, and that, if they succeeded in so purchasing the claims or in making such composition agreement or if they purchased the property at a bankruptcy sale, they would in either case assume the liability of said second parties as indorsers upon certain notes of the corporation. As part of the consideration the second parties were to transfer to defendants their shares in the corporation; and such shares and the contract were placed in escrow. The contract was to be performed within thirty days. *Held*, that the contract was not too vague or indefinite to be enforced in law.

3. The fact that the composition agreement contemplated in such contract would result in those creditors who held the indorsed notes being paid in full, while other creditors received but fifty cents on the dollar, does not make the contract illegal, since the payment of such notes was to be made, not out of corporate funds or property, but out of the individual funds of defendants, which were not impressed with any trust in favor of creditors of the corporation.

Appeal from an order of the circuit court for Milwaukee county: J. C. Ludwig, Circuit Judge. *Affirmed.*

Action to recover damages for breach of contract. In November, 1913, a corporation operating a department store in Milwaukee, known as Leflys, was financially embarrassed. James Harris, its president; Sam E. Blinkenstine, its secretary; *Louis Sulzer,* its treasurer; and Leo D. Lefly, its vice-president and general manager, had become liable on its paper as indorsers to the amount of $92,000. On the 20th of November they entered into an agreement with the defendants whereby the latter agreed to assume their liability as indorsers upon their transfer to them of their shares of stock in the corporation, their resignation from their respective offices, and a cessation of their salaries from the date of the agreement, provided the defendants were able within thirty days to secure an extension of the time of payment of $75,000 of the indebtedness of the Leflys corporation. It soon became apparent that an extension of time could not be secured from the requisite number of creditors. So on November 24th another agreement was entered into between *Maurice Moyer* and James Harris as parties of the first part and *Louis Sulzer,* Sam E. Blinkenstine, and Leo D. Lefly as parties of the second part whereby the defendants in substance agreed, first, to make diligent efforts to purchase all of the outstanding merchandise claims of Leflys on a basis of fifty cents on the dollar and to furnish the money therefor, or, failing in this, second, to furnish the money for a composition to be offered by Leflys in bankruptcy of fifty cents on the

dollar, or, failing in this being satisfactory to creditors or approved by the court, third, to bid at the sale in case the property of the Leflys should go to a bankruptcy sale, and if they succeeded in purchasing the claims at fifty cents on the dollar, or in making a composition agreement at fifty cents on the dollar approved by the court, or if they purchased the property at a bankruptcy sale, they would in either case assume the liability of the parties of the second part as indorsers to the amount mentioned. The contract was to be performed within thirty days from its date. Both contracts, stock, and resignations from office were delivered in escrow to the Wisconsin Trust Company. The plaintiff succeeded to the rights of Blinkenstine and Leflys.

The complaint sets out these contracts and alleges that the defendants failed to make diligent efforts to purchase the outstanding merchandise claims of Leflys; failed to furnish the money therefor; failed to furnish the money for a composition agreement; and failed to bid at the bankruptcy sale, though the property of Leflys was sold at such sale, whereby plaintiff sustained damages in the sum of $92,000. From an order overruling a general demurrer to the complaint the defendant *Moyer* appealed.

For the appellant there was a brief by *Leon B. Lamfrom,* attorney, and *James G. Flanders,* of counsel, and oral argument by *Mr. Lamfrom* and *Mr. C. E. Monroe.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles,* of counsel, and oral argument by *J. V. Quarles.*

VINJE, J. The appellant claims, first, that the contracts were mere options; second, that they were too vague and indefinite to be enforced in law; and third, that the second contract is illegal. The first two claims can best be negatived by the language of the second contract itself. It reads:

"Now, therefore, the parties of the first part, for and in

consideration of the covenants hereinafter contained, hereby agree that they will make diligent efforts to purchase all of the outstanding merchandise claims of Leflys on a basis of fifty cents ($.50) on the dollar ($1) and will furnish the money therefor; that as soon as the said parties of the first part have succeeded in obtaining, either by purchase or by agreement to accept said percentage or otherwise, fifty-one per cent. (51 %) of said outstanding unsecured claims in number and amount, that said parties of the first part will forthwith perform said escrow agreement and forthwith assume the obligations of said parties of the second part therein mentioned and relieve them of all further liability thereon, or will forthwith cause to be submitted the composition hereafter mentioned.

"In case said parties of the first part shall find it impossible to obtain fifty-one per cent. (51 %) of the outstanding unsecured claims of Leflys at fifty cents ($.50) on the dollar ($1), they will furnish the money for a composition to be offered by Leflys in bankruptcy of fifty cents ($.50) on the dollar ($1); that if said composition is approved by the court, that upon said approval said parties of the first part will forthwith perform said escrow agreement, assume liability of said parties of the second part therein mentioned, and relieve said parties of the second part of all liability thereon.

"In case the property of said Leflys shall go to a bankruptcy sale, in that event said parties of the first part agree to bid therefor at said sale, and in case they or either of them shall purchase said property or any part thereof at such sale or shall obtain any interest of any kind, either directly or indirectly, in said property through said sale, they will thereupon perform said escrow agreement, assume the liability of said parties of the second part therein mentioned, and relieve them of all liability thereon."

We fail to see any vagueness or uncertainty in the language used. It provides in clear specific language just what the defendants obligated themselves to do. The fact that the contract gave the parties of the second part the option to cancel it upon a certain contingency does not make its performance optional with the defendants.

The claim that the second agreement is illegal because the

composition agreement therein contemplated provides for the payment of some of the creditors of Leflys in full and of others only fifty cents on the dollar is not tenable. It is true that the agreement, if carried out, would result in those creditors who held paper indorsed by plaintiff and his assignors being paid in full and the others only fifty cents on the dollar. But such payments were not to be made out of corporate funds or property, but out of the individual funds of the defendants. Their individual funds were impressed with no trust in favor of creditors of the corporation. They could use them to pay any debts of the corporation they chose in full or in part. No creditor could thereby be prejudiced, for any payment made by defendants out of their individual funds would reduce corporate liabilities without diminishing corporate assets. Had the agreement been to pay some creditors in full out of corporate assets, another question would have been presented.

*By the Court.*—Order affirmed.